IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA, SOUTHWESTERN DIVISION

| | |
|---|---|
| Auto-Owners Insurance Company, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DW Excavating, Inc., Stenehjem ) <br> Development, LLP., KLC of Willmar, Inc., ) <br> and Travelers Insurance Company d/b/a ) <br> Travelers Insurance ) <br> ) <br> Defendants. ) | Case No. |

### AUTO-OWNERS INSURANCE COMPANY'S
### COMPLAINT FOR DECLARATORY RELIEF

[1]    **COMES NOW** the Plaintiff, Auto-Owners Insurance Company (hereinafter "Auto-Owners"), by and through its counsel of record, Michael J. Morley, of Morley Law Firm, Ltd., Grand Forks, North Dakota, and states against the Defendants DW Excavating, Inc. (hereinafter "DWE"), Stenehjem Development, LLP (hereinafter "Stenehjem"), KLC of Willmar, Inc. (hereinafter "KLC of Willmar"), and Travelers Insurance Company d/b/a Travelers Insurance (hereinafter "Travelers Insurance") as its Complaint for Declaratory Relief as follows:

### NATURE OF THE ACTION

[2]    This is an insurance coverage action. Auto-Owners seeks a declaratory judgment from the Court concerning its and others' rights and obligations regarding insurance coverage under a policy or policies of insurance issued by Auto-Owners to DWE.

[3]    On or about July 25, 2015, DWE and Stenehjem entered into a contract for the performance of water, storm sewer, sewer, and roadway improvements on a development project

owned by Stenehjem and known as Fox Hills Golf Estates (hereinafter "Fox Hills"), in Watford City, North Dakota.

[4]   On or about December 30, 2015, after performing work in accordance with the contract it entered into with Stenehjem, DWE invoiced Stenehjem for $13,826 for work performed under the contract and owed to DWE by Stenehjem.

[5]   On or about February 1, 2016, DWE further invoiced Stenehjem for work performed under the contract totaling $91,875.60.

[6]   As to the Fox Hills project, Stenehjem refused to remit payment, at least in part.

[7]   On or about September 15, 2015, DWE also entered into a contract with Stenehjem under a time and materials contract for certain specified work known as the "Long Drive Project", in Watford City, North Dakota.

[8]   On or about October 6, 2015, DWE invoiced Stenehjem for $20,613 for specified work performed under the Long Drive contract.

[9]   Stenehjem also refused to pay on the Long Drive Project contract, as invoiced by DWE, at least in part.

[10]   On or about February 26, 2016, DWE also entered into a time and materials contract with Stenehjem for the removal of a temporary sewer tank in Watford City, North Dakota.

[11]   On or about March 16, 2016, DWE invoiced Stenehjem for work performed under the aforementioned contract totaling $2,975. On or about May 11, 2016, DWE additionally invoiced Stenehjem for work allegedly performed under the contract totaling $3,185.

[12]   Stenehjem also refused to remit payment as to the temporary sewer removal project, at least in part.

[13] On or about August 30, 2016, Auto-Owners former insured, DWE, filed a suit titled "*DW Excavating, Inc. v. Stenehjem Development, LLP.*" which is currently pending in North Dakota State District Court, McKenzie County, Northwest Judicial District, with case number 27-2016-CV-00368. Attached as Exhibit A is the Complaint and Answer and Counterclaim in that action. DWE asserted several claims as it relates to the above-listed contracts and projects, wherein Stenehjem refused to remit payment. First, DWE alleged material breach of the Fox Hills contract, including breach of obligation of good faith and fair dealing under the Fox Hills contract between Stenehjem and DWE, seeking $105,701 plus interest. Next, DWE alleged material breach of the Long Drive contract, including breach of the obligation of good faith and fair dealing, seeking contractual damages totaling $20,613 plus 18% per annum interest pursuant to the contract. Finally, DWE alleged a material breach of the parties' temporary sewer removal contract, including a breach of the obligation of good faith and fair dealing. DWE filed suit seeking $6,160 plus 6% interest for contractual damages.

[14] In response to the lawsuit initiated by DWE and after refusal to pay, at least in part, Stenehjem filed counterclaims for breach of contract, negligence, unjust enrichment, and further sought declaratory relief as to a construction lien brought by DWE. Stenehjem alleged that DWE failed to complete the project at the specified contract price, failed to provide adequate supervision of the project, and failed to perform under the contract in a workmanlike manner.

[15] In response to the Stenehjem Counterclaim, DWE filed a claim with its former carrier Auto-Owners and requested Auto-Owners defend and provide indemnity and coverage to DWE based on the Stenehjem Counterclaim.[1]

---

[1] Auto-Owners' insurance policies issued to DWE will be addressed more fully below. At the time Stenehjem filed its counterclaims against DWE, Travelers Insurance provided CGL coverage to DWE beginning on or about June 2016. Auto-Owners' policies issued to DWE were issued in June 2014 and 2015, respectively, for one year terms and would have generally been active during the course of the construction project between DWE and Stenehjem.

[16] In response, Auto-Owners issued a reservation of rights letter to DWE contending that the claims and allegations and damages sought in the counterclaim by Stenehjem against DWE were not covered under the CGL policy issued by Auto-Owners to DWE. Auto-Owners reserved all of its rights, obligations, duties, exclusions and exceptions as set forth in the subject Auto-Owners' policies issued to DWE.

[17] A justiciable controversy currently exists among the parties because Auto-Owners contests and disputes any obligations regarding insurance coverage and defense that are being claimed by DWE, Stenehjem, and any other Defendants, under the referenced insurance policies issued by Auto-Owners to DWE.

## THE PARTIES

[18] Auto-Owners Insurance Company ("Auto-Owners") is a Michigan corporation, doing business as a property and casualty insurance company. Auto-Owners maintains its primary place of business in Lansing, Michigan, but is licensed to do business as an insurer in various states, including North Dakota. Auto-Owners issued two (2) policies of insurance to DW Excavating (2014 and 2015, respectively), which are at issue regarding the counterclaims asserted by Stenehjem Development, LLP against DWE in the underlying North Dakota State Court lawsuit.

[19] Defendant DW Excavating, Inc. ("DWE") is a Washington corporation with its principal place of business in Davenport, Washington, but from at least 2014 – 2016, it was conducting work in the state of North Dakota and was authorized to do so.

[20] Defendant Stenehjem Development, LLP ("Stenehjem") is a North Dakota Limited Liability Partnership with its principal place of business in Watford City, North Dakota and is or was authorized to conduct business in the State of North Dakota.

[21] Defendant KLC of Willmar, Inc. ("KLC of Willmar") is a development and construction firm based out of Willmar, Minnesota and is or was authorized to conduct business in the State of North Dakota.

[22] Defendant Travelers Insurances Company d/b/a Travelers Insurance ("Travelers Insurance") is a New York Corporation, doing business as a property and casualty insurance company. Travelers Insurance maintains its primary place of business in New York City, New York, but it is incorporated in the state of Minnesota and is licensed to do business as an insurer in various states, including North Dakota. Travelers Insurance issued one or more policies of insurance to DWE which may be implicated by the claims of the underlying litigation and counterclaims.

## JURISDICTION AND VENUE

[23] Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) since this is an action between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

[24] Venue and personal jurisdiction over DWE and the various defendants is proper because all parties were doing business in McKenzie County, North Dakota and/or are residents and citizens of the State of North Dakota during designated policy periods.

[25] The policies of insurance from Auto-Owners (described below) which are the subject matter of this action, were issued by the Plaintiff Auto-Owners to DWE. Defendant Travelers also issued policies of insurance to DWE beginning in 2016. Each of these policies of insurance were designed and intended to insure physical property and business operations of DWE in North Dakota, for the designated policy periods, subject to all terms, provisions and exclusions in the policies.

[26]     Personal jurisdiction over DWE is proper because the underlying lawsuit initiated by DWE in North Dakota State Court and the claims asserted therein, as well as the counterclaims alleged by Stenehjem, arise, in whole or in part, out of DWE's interstate communications, commercial dealings, and tortious or contract claims and counterclaims related to the underlying North Dakota State Court lawsuit and work performed by DWE in North Dakota alleged above.

## FACTUAL BACKGROUND – INSURANCE POLICIES

[27]     On information and belief, Travelers Insurance issued comprehensive general liability insurance coverage to DWE and its named insured, for the policy term beginning June 14, 2016 and extending thereafter and effective for a term of one year. Auto-Owners does not have a copy of the insurance policy or policies that Travelers Insurance issued to DWE in 2016 and 2017, respectively.

[28]     Effective as of June 14, 2014, Auto-Owners issued policy number 124608-33182464-14 for the policy period of June 14, 2014 to June 14, 2015 to its named insured, DWE. A certified copy of the of 2014 Auto-Owners insurance policy is attached and incorporated as if set forth verbatim in this paragraph, as Exhibit B.

[29]     Effective as of June 14, 2015, Auto-Owners issued policy number 124608-33182464-15 for the policy period of June 14, 2015 to June 14, 2016 to its named insured, DWE. A certified copy of the 2015 Auto-Owners insurance policy is attached and incorporated as if set forth verbatim in this paragraph, as Exhibit C.

[30]     As material to the disputes detailed in this Declaratory Judgment Complaint, the 2014 and 2015 Auto-Owners' policies, afford to DWE comprehensive general liability insurance coverage subject to all terms, conditions, definitions, limitations and exclusions. Hereinafter, the

2014 and 2015 Auto-Owners policies will be collectively referred to as the "Auto-Owners' Policies."

## FACTUAL BACKGROUND – AUTO-OWNERS

[31] On or about October 20, 2016, DWE notified Auto-Owners of the underlying litigation with respect to Stenehjem's counterclaims against DWE following DWE's initiation of litigation against Stenehjem Development.

[32] After comparing the allegations of the Stenehjem Counterclaim to the terms of the various Auto-Owners policies, Auto-Owners concluded that it most likely did not owe DWE a defense or any coverage for the counterclaims asserted by Stenehjem against it. However, Auto-Owners recognized that at least some of its coverage defenses might be disputed. Accordingly, on April 25, 2017, Auto-Owners advised DWE that its investigation into the Stenehjem Counterclaims was ongoing and all rights, exclusions and policy defenses were expressly reserved and not waived pending a further investigation into the subject underlying lawsuit by Auto-Owners and its representatives.

[33] On April 25, 2017, Auto-Owners provided DWE a detailed statement of Auto-Owners reservation of rights. A copy of Auto-Owners' reservation of rights letter is attached and incorporated as if set forth verbatim in this paragraph, as Exhibit D.

[34] Counts I and II below, detail different coverage defenses which independently constitute partial or complete defenses to any contention that Auto-Owners is obligated to afford defense and/or indemnity coverage for the underlying Stenehjem Counterclaims.

[35] On information and belief, each named Defendant contests one or more of the Counts below. Pursuant to 28 U.S.C. § 2201(a), this Court has jurisdiction and authority to declare the rights and obligations of the various insurers and parties concerning DWE's entitlement to coverage with respect to the underlying Stenehjem Counterclaims.

## COUNT I

**(The Stenehjem Development Counterclaims Do Not Qualify
as Property Damage Coverage Under Auto-Owners Policies)**

[36]    Auto-Owners repeats and re-alleges paragraphs 1 through 35 above in support of this Count.

[37]    Stenehjem's Counterclaims allege no physical damage to any property or work of others, outside of DWE.

[38]    Pursuant to the provisions of the Auto-Owners' Policies detailed below, the Auto-Owners' Policies afford no coverage to DWE to the extent the counterclaim of Stenehjem alleges a failure by DWE to complete its work and seeks monetary/economic damages thereof.

[39]    In pertinent part, the Auto-Owners' Policies define "occurrence," and "property damage" by the following provisions:

> 14.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> 18.    "Property damage" means:
>    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[40]    In addition, the Auto-Owners' Policies define "Your Product" and "Your Work" to mean the following:

> 25.    "Your product"
>    a.    means:
>       (1)    Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:
>          (a)    You;
>          (b)    Others trading under your name; or

8

        (c)    A person or organization whose business or assets you have acquired; and

    (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b.    includes:
    (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance of use of "your product"; and
    (2)    The providing of or failure to provide warnings or instructions.

  c.    does not include vending machines or other property rented to or located for the use of others but not sold.

26.    "Your work"
  a.    means:
    (1)    Work or operations performed by you or on your behalf; and
    (2)    Materials, parts, or equipment furnished in connection with such work or operations.

  b.    includes:
    (1)    Warranties or representations made at any time with respect to the fitness, quality, durability performance or use of "your work"; and
    (2)    The providing of or failure to provide warnings or instructions.

[41]    However, a covered "occurrence" causing "property damage" is then limited by the Auto-Owners' Policies' exclusions so as not to afford coverage in the following described circumstances:

This insurance does not apply to:

a.    Expected or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.    Contractual Liability

9

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

\* \* \*

j. Damage to Property
"Property damage" to:

\* \* \*

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

k. Damage to Your Product
"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard."

[42] The Auto-Owners' Policies also limit coverage for liabilities arising from a "Products-Completed Operations Hazard." "Products-Completed Operations hazards" are defined, in pertinent part, to mean:

19. "Products-completed operations hazard"
  a. includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    (1) Products that are still in your physical possession; or
    (2) Work that has not yet been completed or abandoned.
  However, "your work" will be deemed completed at the earliest of the following times:
    (a) When all of the work called for in your contract has been completed; or
    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or
    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another

10

> contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as competed.

[43] The Stenehjem Counterclaim alleges that DWE promised but failed to properly perform all the work necessary to complete the residential development projects as specified in the parties' contract. The Stenehjem Counterclaim further alleges that DWE failed to complete the project for the specified contract price, failed to complete the project at all, failed to perform the contract in a workmanlike manner, and failed to adequately supervise the project. To the extent that DWE's liability arises directly or indirectly from defects or deficiencies in its own work, the losses arising from such conduct would not qualify as an "*accident*" and thus would not qualify for coverage as an "*occurrence.*" Additionally, to the extent that the Stenehjem Counterclaim relates to defects or deficiencies in DWE's own "work", such losses would also be excluded under the subject Auto-Owners' policy issued to DWE based on the "property damage" to "your work" exclusion in the Auto-Owners' Policies, among others.

[44] The Stenehjem Counterclaim further alleges that DWE was negligent in its performance of work under the specified contract and that DWE owed a duty to exercise reasonable care so as not to damage Stenehjem's property, that DWE breached such duty, and that Stenehjem was harmed as a result. To the extent that DWE's liability arises directly or indirectly in the negligent exercise of work under the specified project, the Auto-Owners' Policies afford no coverage by reason of exclusions "j", "k", and "l" which excludes coverage for "property damage to work that must be repaired restored," "property damage to your product" and "property damage to your work" respectively.

[45] The underlying Stenehjem Counterclaim alleges that DWE breached its express and its implied warranties regarding the quality and fitness of its work. To the extent that

11

DWE's liability arises directly or indirectly from any breach of contract warranties or other contract obligations, the Auto-Owners' Policies afford no coverage by reason of exclusion (b) – *"property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.*

[46]    The Stenehjem Counterclaims against DWE are unclear as to whether the alleged defective or negligent work performed by DWE arises from, or is related to, the work DWE performed or failed to perform on the subject project. To the extent that the damages alleged by Stenehjem include claims for damage associated with DWE's work, the Auto-Owners' Policies afford no coverage by reason of the provisions of exclusion (l) – *"Property Damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard"* and/or exclusion (j) – *"Property damage" to . . . That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

## COUNT II

**(There is No Coverage Under the Auto-Owners Policies for Damage to Property Incorporating DW Excavating's Work)**

[47]    Auto-Owners repeats and re-alleges paragraphs 1 through 46 above in support of this Count.

[48]    Pursuant to the provisions of the Auto-Owners' Policies detailed hereinafter below, the Auto-Owners' Policies afford no coverage for property damage to property which is damaged solely by reason of the incorporation of DWE's work.

[49]    In pertinent part, the Auto-Owners' Policies define "Impaired Property," by the following provisions:

> 11.    "Impaired Property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement.

If such property can be restored to use by:

    a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.    Your fulfilling the terms of the contract or agreement.

[50]    The Stenehjem Counterclaim combined with DWE's Complaint, describe sewer, water, and excavation services which DWE provided in support of Stenehjem's development of the subject property.

[51]    The Stenehjem Counterclaim describes real property upon which DWE performed work but which work now allegedly needs repair, replacement, adjustment, or removal in order to restore the usefulness or value of the property and/or development project.

[52]    As described in the Stenehjem Counterclaim, the property upon which DWE work was performed qualifies as "*impaired property.*"

[53]    To the extent that the damages alleged by Stenehjem arise from damage to "*impaired property,*" the Auto-Owners' Policies bar coverage for such claims by the following exclusion:

    m.    Damage to Impaired Property or Property Not Physically Injured

        "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

        (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

        (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms…

[54]    The provisions of exclusion (m) bar coverage for both physical injury to "impaired property" caused by the incorporation of defective DWE work, and for non-physical injury caused by the incorporation of defective DWE work. Non-physical injury may include the

13

natural and ordinary consequences of defective workmanship, "frustrated commercial expectations", breach of contract damages, and/or other types of "economic loss" which cause the claimants to incur loss or diminution of value in other property, without physical injury to the impaired property.

[55]   Auto-Owners reserves all other terms and exclusions in Auto-Owners' Policies, even if not cited above, that may apply to exclude coverage for the Stenehjem Counterclaim. Citation to specific terms and exclusions above does not waive others that may apply. All are preserved.

## RELIEF REQUESTED

**WHEREFORE,** Auto-Owners Insurance Company asks that this Court grant it declaratory and other relief as follows:

(A)   (Count I) find and declare that the claims asserted in the Stenehjem Counterclaim do not qualify as an "occurrence" and are accordingly not entitled to coverage under the Auto-Owners' Policies;

(B)   (Count I) find and declare that the claims asserted in the Stenehjem Counterclaim arise from defects and deficiencies in the "work" performed by DWE, which are excluded from coverage under exclusion (a);

(C)   (Count I) find and declare that the claims asserted in the Stenehjem Counterclaim arise from express or implied contract warranty liabilities, which are excluded from coverage under exclusion (b);

(D)   (Count I) find and declare that the claims asserted in the Stenehjem Counterclaim arise from contract liabilities which have been assumed by DWE and which are thus excluded coverage under exclusion (b);

(E)     (Count I) find and declare that the claims asserted in the Stenehjem Counterclaim arise from damage to DWE's "work", which are excluded from coverage under exclusion (l);

(F)     (Count I) find and declare that the claims asserted in the Stenehjem Counterclaim arise from the need to restore, repair or replace property that was damaged by DWE's "work", which are excluded from coverage under exclusion (j);

(G)     (Count II) find and declare that the claims asserted in the Stenehjem Counterclaim arise from the need to restore, repair or replace "impaired property" that was damaged by incorporation of DWE's "work", which are excluded from coverage under exclusion (m);

(H)     (All Counts) find and declare that the Auto-Owners Policies, and all applicable terms, limitations, provisions, and exclusions contained therein, do not afford indemnity coverage of defense obligations to DWE in relation to the Stenehjem counterclaims;

(I)     Award plaintiff its costs, disbursements and attorneys' fees incurred herein; and

(J)     For such other and further relief as the Court deems just and proper.

Dated this 23 day of October, 2017.

_____
Michael J. Morley #03596
Sean F. Marrin #07847
MORLEY LAW FIRM, LTD.
4000 Garden View Drive, Suite 100
PO Box 4519
Grand Forks, ND 58208-4519
(701) 772-7266
mmorley@morleylawfirm.com
smarrin@morleylawfirm.com
Counsel for Auto-Owners Insurance Company